MUNICIPAL ASSEMBLY OF MAUNABO, Petitioner and Appellee, *v.* CASIMIRO STEIDEL, MAYOR, Defendant and Appellant.

No. 9. Argued May 13, 1939.—Decided May 19, 1939.

*Burset & Pérez Pimentel* for appellant.   *R. Calderón Rodríguez* and *Ramón Meléndez* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

The 28th of July 1938, Agustín Torres Bellber, a member of the Municipal Assembly of Maunabo, preferred charges

before said Assembly against Casimiro Steidel, the Mayor. Said charges read as follows:

"1. That Casimiro Steidel, as Mayor of the Municipality of Maunabo, Puerto Rico, permitted Miguel Sánchez, who was employed in the aqueduct of Maunabo, P. R., as watchman of the same and for which he was paid a salary by the Municipality, to abandon his official employment and work and collect a salary in the plantations of the P.R.R.A., collecting his salary in both places at the same time.

"2. That Casimiro Steidel, as Mayor of the Municipality of Maunabo, Puerto Rico, allowed Gumersindo Figueroa, a municipal messenger, to work in the Maunabo plantations, thereby abandoning his duties in the City Hall, and collecting a salary in both places.

"3. That Casimiro Steidel, as Mayor of the Municipality of Maunabo, and without the consent of the Municipal Assembly acquiesced in and permitted Antonio Saldaña to plant tobacco in a parcel of land belonging to the Municiaplity, this being an attribute of the Municipal Assembly.

"4. That Casimiro Steidel, as Mayor of the Municipality of Maunabo, Puerto Rico, allowed, consented to and ordered the Warden of the municipal jail of Maunabo to deliver animals under custody to their owners without the payment required by law."

After the charges were read, the Assembly decided to suspend the defendant and gave him until August 17, 1938, to file his answer. As appears from the minutes of the Municipal Assembly, which are part of the record, the Municipal Assembly held meetings on the days 17th of August, 1, 6 and 16 of September and 3rd of December, 1938, in extraordinary session to hear the charges against the Mayor. In none of said sessions was anything done except to suspend them. In the meeting of the Assembly on December 21, 1938, the same member Agustín Torres Bellber preferred four additional charges against the defendant. Said charges read as follows: ·

"1. That Casimiro Steidel, as Mayor of the Municipality, on August 21, 1937, in a discussion that he had with the Socialist nurse María P. Solís, threatened to dismiss her and said to her, among other things: 'The hairs which are missing from my head are on your

vulva, not to say something else', which was contrary to the public morals that a public official should have, especially a Mayor.

"2. That Casimiro Steidel, as Mayor of the Municipality, ordered the workman Gumersindo Figueroa to take certain trunks of trees which had been chopped down in the public square to his house, taking them for his own use, this being Municipal property which could have been sold. This was seen by the member Ejea and the undersigned member.

"3. That Casimiro Steidel, as Mayor and President of the Entertainment Committee in the fiestas of San Pedro did not deliver to the Assembly a statement of the funds collected on the public square, which were given to help in the celebration of the fiestas and the remanent for medicines or any other public Municipal function. Nor has he delivered any statement as to the persons who rented sites nor what each person paid for the respective site during the duration of the fiestas or what was paid daily by each person.

"4. That Casimiro Steidel, as Mayor of the Municipality, kept the medicines for the poor in his office, thereby forcing very many ill persons to return to their homes without the medicines prescribed to them by the doctor, thus hindering highly important Municipal services."

The Assembly gave the defendant a period of ten days to answer the charges and declared a recess until the first Tuesday after the 6th of January, which date was set to hear the charges. On the 10th of January, 1939, almost six months after the defendant was suspended, the Assembly again held a meeting to hear the charges; after the President explained "that if there had been any delay in the proceedings it was due to the fact that the leaders of the political parties, members of the Coalition, had been postponing an agreement in regard to this matter, and, that therefore, the Assembly is not at fault", the meeting was suspended until January 13, 1939, to give the Assembly an opportunity to contract the services of an attorney.

In the meeting of January 13th the answer of the defendant to the original charges was read. It states:

"*First.*—That he denies the entire first charge because it is untrue, and on the contrary, alleges as a defense: That Miguel Sánchez

was not a watchman of the aqueduct during the month of July, 1937; this job was held by his son Mercedes Sánchez, as is proven by a sworn declaration of said Miguel Sánchez, which is attached and made to form a part of this answer and wherein it is stated that if at any time he worked outside of the Municipality this fact was unknown to the defendant. An affidavit of the Secretary-Auditor of this Municipality, which is also attached hereto, proves that said Mercedes Sánchez collected twenty dollars for services rendered to the Municipality as watchman of the aqueduct. It is also alleged in defense of the accused that Miguel Sánchez collects from an item in the budget entitled 3501, Daily Wages: Cleaning of the aqueduct, and that therefore he work for day wages and is not an employee or officer of the Municipality.

"*Second.*—In like manner the accused denies the entire second charge, and on the contrary, alleges that Gumersindo Figueroa has never worked for the Maunabo plantations, thereby neglecting his duties to the Municipality, with knowledge of the accused, and that if at any time he was absent from his work at the Municipality, he was substituted by his son Angel Figueroa, said Figueroa having alleged that he was sick as is evidenced by a sworn declaration attached hereto. It is also alleged in defense of the accused that the job which Gumersindo Figueroa had as municipal janitor was paid from the item 2292, cleaning of municipal buildings, for services, and he was not an employee or officer of the Municipality.

"*Third.*—That in denying the third charge the accused alleges as a defense that Antonio Saldaña, who is a very poor and unemployed workman with a large family dependent upon him, came to the defendant Mayor and requested permission to clean the yard of the Municipal Hospital and to plant therein vegetables and tobacco; that he bound himself to keep said yard clean always and also the surroundings of the hospital and to give a third part of the product to the Municipality; that the Mayor gave Saldaña the permission under the aforesaid conditions and that the product of the tobacco planted has not yet been liquidated, but that as soon as it is, its corresponding part will be delivered to the Municipality. The Mayor defendant believes that the Municipality has not been prejudiced in any manner whatsoever and that on the contrary it has been greatly benefited, since Saldaña kept the surroundings of the Municipal Hospital clean without any cost to the Municipality whatsoever. In defense of the accused, a sworn declaration of Saldaña, testifying to the same facts hereinbefore set forth is attached to this answer.

"*Fourth*.—The Mayor defendant denies in all its parts the fourth charge because in his opinion it is not true, and in his defense he alleges: that he neither permitted, nor consented, nor ordered the Warden of the Municipal Jail of Maunabo, P. R., to deliver any animals under custody to their owners without the payment required by law. That the Mayor defendant, besides the other many successes of his administration, alleges in his defense in regard to this matter that he has been the only Mayor of this town who has had the greatest success until now in favor of the Municipality, as is proven by a certificate of the Secretary-Auditor himself, in which it is stated that during the semester from July to December of the year 1936, of the last administration only the amount of $12.50 entered for "Custody of animals" and that during the following semester of his administration, from January to July, 1937, the amount of $164.23 was collected, and that later, during the fiscal year 1937–38 the amount rose to $317.75, that is, $153.32 more than in the previous year. The Mayor also alleges in his defense that if the income has not been more it is due to the fact that there are members of the Assembly who have ordered the delivery to them of animals placed in custody without paying the corresponding fees, and especially if he had accepted *written and signed recommendations of the petitioner himself addressed to the Mayor* defendant, then there would be no doubt that this income would have been greatly diminished, thereby prejudicing the Municipality. The Mayor defendant has authentic evidence to prove the reference to the petitioner which appears in italics in this paragraph of this answer."

The answer to the additional charges reads as follows:

"*First*.—That he denies in its entirety the first charge because it is vague, and, on the contrary, alleges as a defense that María P. Solís was not a Municipal nurse on August 21, 1937, nor did she have any employment in the Municipality of Maunabo, nor was she threatened by the undersigned Mayor with dismissal, nor did he address any phrase whatsoever to her which may be against public moral.

"*Second*.—That he denies the second charge of having appropriated for his own use some trunks of trees from the public square and on the contrary he alleges that the workman Gumersindo Figueroa received as the only payment for cleaning the public square some tree trunks.

"*Third.*—He absolutely denies the third charge and on the contrary alleges that he delivered an account to the Municipality of Maunabo of the rest of the funds corresponding to the fiestas of said Municipality and delivering said funds to the Municipal Treasurer of Maunabo.

"*Fourth.*—He denies the fourth charge and on the contrary he alleges that he has never withheld the medicines of the poor nor hindered Municipal services, but he has kept the medicines under his custody so that they would not be used for other purposes and by persons not in charge of said medicines."

After the charges and the answer were read, the Assembly decided, against the opposition of the accused, to recess for 20 days until February 2, 1939, so that the attorneys of the Assembly would have an opportunity of studying the charges and preparing their evidence. The meeting of February 2 was entirely taken up by a discussion of various matters of law submitted by the attorney of the defendant, all of which were denied. On February 3 the evidence of the charges was begun and continued during the days 6, 9 and 14 of February, 1939. On the 16th of said month the Municipal Assembly of Maunabo rendered a final decision with the following holdings:

"(1) The impeached Mayor Casimiro Steidel is exonerated from the charges numbers 1 and 2.

"(2) And, based on charges numbers 3 and 4 and 1, 2, 3 and 4 of the additional charges, the said Casimiro Steidel is dismissed from his position of Mayor of Maunabo, Puerto Rico, said officer's salary and employment being suspended by law while this decision is final."

On February 27, 1939, the defendant filed a notice of appeal in this Supreme Court accompanied by a memorandum containing his allegations of fact and law to uphold his appeal.

The appellant alleges that the Municipal Assembly acted moved by bias, prejudice and partiality against the Mayor; that it acted with malice in delaying unjustifiedly the proceeding from July 23, 1938, until February 16, 1939, thereby

depriving the appellant of a rapid, just and impartial trial, and that the evidence adduced to uphold the charges is incompetent and insufficient to sustain them.

We shall not consider the technical questions of law raised by the appellant, but will enter fully into a critical examination of the evidence on which the decision appealed from is based.

To sustain the additional charge number 3, whereby the Mayor was accused of having permitted the planting of tobacco in the yard of the Municipal Hospital, the testimony of Antonio Saldaña was presented, who testified:

That he asked the Mayor for permission to plant the tobacco; that the previous administrations had always given permission to everyone; that the Mayor gave him permission with the understanding that he keep the yard of the hospital clean always and that he give something to the Municipality in case he made a profit from the tobacco; that he did not make a profit, because he spent $29 and did not get $15; that while the tobacco was there, the yard was always clean and that on the contrary now it is overgrown, the same as when he took it over; that no one participated in the tobacco with him; that the tobacco that he collected he exchanged for a goat.

When witness Saldaña finished testifying, the member of the Assembly Agustín Torres Bellber, who preferred the charges against the accused, offered to testify to impeach the testimony of Saldaña by stating that the latter had informed him "that this tobacco had been planted there by order of the Mayor" and he added that the tobacco plant "has nicotine and produces a smell which causes prejudice to the patients interned in the hospital."

In the absence of any proof to show that the accused was benefited in some way or that the Municipality was prejudiced in its interests as a consequence of the planting of the tobacco, the charge is trivial and in our opinion does not constitute sufficient cause to justify the dismissal of the accused. The

very evidence of the petitioner was that the Municipality was benefited by the cleaning of the yard of the hospital while Saldaña had his tobacco planted there.

To sustain the original charge number 4—whereby the accused was alleged to have permitted and ordered to deliver to their owners animals under custody without collecting the amounts fixed by law—the evidence of Juan Texidor Puma, Warden of the Municipal Jail, was given. This was supposed to be the person to whom the Mayor had ordered that the animals be delivered. In answer to questions of the attorney for the Assembly, he testified: That the Mayor never ordered him to deliver the cattle in custody without charging the rates fixed by law. Upon being asked by the Assemblyman Torres Bellber, the witness answered that he did not remember having given to said member a paper wherein the Mayor ordered the witness to deliver a pig and a cow. In answer to questions of the member Casta, the witness reaffirmed his testimony that the Mayor had never given him any order to deliver cattle to any person whatsoever. And when he was asked if any other person had given him said orders, he said: 'I remember now that this man (Torres Bellber) told me: 'We have to play politics here and give the animals to the good Socialists' ''; but that he never had to deliver any animal since his job lasted but a few days.

To impeach the veracity of Juan Texidor Puma, the member Torres Bellber again testified and declared that he as President of the Socialist Party received many complaints against the Warden of the jail, Texidor, in the sense that he was always abandoning his duties, that the Party recommended Carlos Torres to substitute him; that that is why Texidor refuses to tell the truth; that the truth is that Texidor gave him some papers relating to orders of the Mayor for the delivery of animals; that those papers had disappeared; that it is not true that he told Texidor that the cattle must be delivered to play politics.

This evidence is clearly insufficient to uphold this charge. The hearsay evidence of Torres Bellber in regard to manifestations that Texidor made to him, contrary to those which he made on the day of the hearing favorable to the accused, may be used to impeach the testimony of the witness Texidor, but they are inadmissible as evidence against the accused. The charge should have been dismissed for lack of evidence.

■■ The first of the additional charges refers to the statements which were allegedly spoken by the accused to the Socialist nurse María P. Solís. To uphold it, the only evidence presented was that of Solís, who testified that on or about August 21, 1937, she was employed as nurse in Maunabo; that she resigned as Municipal Nurse in April, 1937, because the Mayor offered no guaranty to her because on a certain occasion when she was working there, she heard a conversation in the hospital when the Mayor said that Agustín Torres Bellber was responsible for the fact that there was no doctor; that she told the Mayor that what he said was false and that she knew that he had declared war on her and that he had hairs on his heart, and that he answered "that if he had them on his heart, I had them in a certain part and then he pointed with his hands and with his eyes to a certain place', referring to her sexual organs. To questions of the defense she answered that she is married and a nurse and that therefore the term "vulva" does not surprise her; that on August 21, 1937, the day on which this conversation took place, she was not an employee of the Municipality of Maunabo for she had resigned in March or April of that same year. Upon being examined again by the attorney for the Assembly, the witness testified that on the day that the Mayor spoke in this manner to her, she was in the hospital taking care of the sick; that the Mayor spoke in this manner to her in the hall in front of a group of about 25 persons; that she asked for help from the police station and that a policeman investigated the case and the Mayor did not deny to the policeman that he had spoken said

words and he upheld them in public; that the only thing that she said to the Mayor was that the hairs missing from his bald spot were on his heart; that while she left the hospital to look for the policeman, the Mayor prepared the public so that they would testify in his favor.

If it is taken into consideration that the incident between the accused and Mrs. Solís occurred 16 months before charges were preferred in the Assembly and that during that time Mrs. Solís did not have sufficient interest in the matter to present an accusation against the Mayor, even though the event happened in the presence of 25 persons and a policeman; that the incident was provocated by Mrs. Solís herself when she charged the Mayor with having told a lie against the Assemblyman petitioner Torres Bellber and in stating that he had on his heart the hairs which were missing from his bald spot, thereby paving the way for the offended Mayor to answer her in similar terms, although with reference to a different part of her anatomy; that it is most unusual that there being more than 25 persons and a policeman present, who were alleged to have seen and heard the insult of a woman by a man, not even one of them came to her defense nor appeared before the Assembly to corroborate the testimony of Mrs. Solís, emphatically denied by the accused; and, lastly, that the fact, even if it were true, has no relation whatsoever with Public Service and can in no way have affected the interests of the Municipality, we must reach the conclusion that the Assembly erred in not dismissing the charge for insufficiency of the evidence adduced to sustain it. From the fact that not a single witness was presented of the 25 persons which according to Mrs. Solís were present when the incident took place or the policeman who intervened, the legal presumption arises that this evidence, voluntarily suppressed by the petitioner, would have been adverse if it had been offered. Section 102, paragraph 5, Law of Evidence.

■ The additional charge number 2, whereby the Mayor is alleged to have appropriated to his own use various tree trunks chopped down in the public square, is not sustained by any evidence to show that the Mayor has been benefited or that the Municipality has been prejudiced in its interests. Let us examine the evidence.

Gumersindo Figueroa testified that he was janitor of the City Hall for fourteen months from January 11, 1937; that the Mayor never ordered him to carry any tree trunks nor did he ever take any for the Mayor; that once there were some trees in the public square which were bothering and which had to be chopped down because they were drying up, the Mayor looked for a peon who would do the work and then the witness offered to do it himself on the condition that he be given the wood; that the Mayor refused because the witness was an employee of the Municipality; that he then proposed to the Mayor that he be given the wood and that he would put a peon to chop down the trees and to remove them from the public square; that the Mayor accepted this proposition; that he took out two carloads of wood and sold them to a bakery; that the Mayor told him to take the wood in payment for his labor; that in the bakery he was paid $2.50 for the wood, of which he gave a half to the peon and kept $1.25 for himself to compensate himself for the extra hours that he worked helping the peon; that he gave no money to the Mayor nor to any other person; that some of the trunks which were left over were used in the butcher's shop and in the Municipal Corral. Upon being asked by the member Ejea whether it was true or not that the witness had offered him the wood, telling him that the Mayor had told him to sell it, the witness answered: "No, Sir, that is not true".

To supply the deficiency of his own witness and to impeach his veracity the member petitioner, Agustín Torres Bellber, again testified and said: "What I know is that Gumersindo Figueroa passed with a trunk to the house of the Mayor

and told the Assemblyman Ejea and myself that the trunk was for a kitchen of a house of the Mayor.'' The attorney for the defense requested the elimination of said testimony because it was hearsay and took exception when his request was denied. To this same effect the Assemblyman Ejea was permitted to testify with the only difference that he added that it was not one but five tree trunks that Figueroa was taking to the kitchen of the Mayor.

It was an error of the Assembly to declare this charge proven based on hearsay evidence offered to impeach the veracity of the witnesses of the petitioner. The charge should have been dismissed.

■ The accused appellant in the additional charge number three is accused of not having rendered an account to the Assembly of the funds collected during the fiestas of San Pedro. In the transcript of the evidence it appears (pages 27 and 77) that the attorneys of the Assembly requested the filing of this charge because they considered it frivolous and vicious because the Mayor is · not legally bound to render such an account to the Assembly and because it is not alleged that the accused has appropriated entirely or in part the money so collected nor that the Municipality has been prejudiced in its interests. The opposition of member Torres Bellber was enough so that the motion to file was defeated by a vote of five against two.

To sustain the charge the member Torres Bellber testified that the Assembly had adopted a resolution so that the money collected by the entertainment committee should be delivered to the Municipal Treasurer and that a memorandum be made of the amount collected and delivered to the Assembly; that this was not done by the Mayor. The Secretary-Auditor of the Municipality of Maunabo testified: that as appears from the minutes number 50 that he has before him in the session of June 22, 1938, to which the member Torres Bellber assisted, the only thing that was resolved reads as follows:

"Now the Assembly resolves to cede to the Entertainment Committe of the Fiestas of the Patron Saint whatever is collected from the public spectacles during the days of the fiestas for the rent of space in the square, installation of roulettes and other games. This resolution was adopted by the Assembly over the negative vote of Mr. Agustín Torres."

The Secretary and Auditor continued testifying that of his own knowledge he knows that the Mayor gave $30 as a gift to the Municipal Hospital and that said sum was the rest of the money collected in the fiestas of the patron saint. The member Torres Bellber returned to the attack to testify that if he signed the resolution read by the Secretary he did so inadvertently and without noticing that in the minutes it had not been stated that any remanent should be for medicines for the sick in the hospital; and he insisted that the Assembly had resolved "that the Entertainment Committee would return the remanent to the Assembly".

The charge should have been dismissed for the reasons set forth in the motion to file away of the attorneys of the petitioner.

The fourth and last additional charge should have been dismissed for being vague and unprecise. The evidence offered to sustain it was vague, unprecise and insufficient. The Assemblyman Ejea testified that on some day, without stating it, he went with six veterants to the hospital and that the doctor told him to wait half an hour while he sent for medicines for the sick; that he was forced to wait six hours because the Mayor, who kept the medicines in his office, could not be found; and that the veterans left without the medicines. On cross-examination he could not state what date it was nor the name of the veterans, nor the class of medicines that they needed.

To reinforce the testimony of the witness Ejea, Mr. Torres Bellber again offered his testimony and declared that he knew that on many occasions the sick had to go without medicines because the Mayor did not hand them out. He

did not state any dates nor names of the sick and lastly he testified that he knew that the Mayor put water into the medicines.

■ We have made a complete and careful study of the evidence brought to this court, including all the minutes of the sessions of the Assembly in regard to this matter. We have experienced the natural sensation of bitterness and disgust which is produced in just minds by all human acts carried out under the influence of passion and of the instinct for vengeance.

A reading of the record reveals clearly that all this proceeding has moved around the Assemblyman Agustín Torres Bellber, accuser, star witness, impeacher of every witness who did not testify according to his desires, and lastly, as an assemblyman, taking part with his vote in the decision of the case against the accused.

It is lamentable that the bias, the prejudice and the partiality clearly manifest in all this proceeding should have led a man elected to serve the public to use his position to try to spoil with unbased accusations the good name of another citizen who has won the public confidence. But even more lamentable is the sad spectacle offered by a whole Assembly that because it is effete or incompetent lends itself to serve as an instrument to the bias of one of its members.

We have expressed ourselves in a frank and strong language not only because we believe that the record before us justifies it, but also inspired by the wish to help as far as we can to guide and educate our people civically. The position of Mayor of a Municipality is a position of honor and of responsibility; the highest honor that citizens of a Municipal community can confer and the most grave responsibility that they can impose upon one of their brother citizens. It is the duty of the holder of said honor to make himself worthy of the same, serving his constituents with loyalty and efficiency. The Mayor should above all be strict and scrupulous in the management of public funds and in the adminis-

tration and preservation of Municipal Property, avoiding even those small irregularities that may be cause for criticisms or that may raise doubts in regard to his integrity. And it is the duty of his constituents, even of those who may be his personal enemies, to respect him, encourage and help him in the carrying out of his public duties. It is only thus that it is possible to carry out the normal functioning of a democratic regime.

We are of the opinion that according to the record before us there was not "just cause" for the dismissal of the appellant Mayor and that the same was rendered against the provisions of Section 29 of the "Act establishing a system of local government for the Municipalities of Puerto Rico", approved on April 28, 1928 (Act No. 53 of 1928, page 334), as it was amended by Act No. 98 of May 15, 1931 (Laws of 1931, pages 594, 608).

For the aforesaid reasons, the decision appealed from should be reversed and the appellant Casimiro Steidel should be reinstated in his office as Mayor of the Municipality of Maunabo and the Assembly appellee is ordered to pay the costs, plus the sum of $150 as the attorney's fees of the appellant.